KEVIN V. RYAN (CASBN 118321)
United States Attorney

MARK L. KROTOSKI (CASBN 138549)
Chief, Criminal Division

150 Almaden Boulevard, Suite 900
San Jose, California 95113
Telephone: (408) 535-5035
Facsimile: (408) 535-5081
E-Mail: Mark.Krotoski@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>MEHDI MATT RASHIDI,<br>Defendant. | No. CR 05-00744 MJJ<br><br>GOVERNMENT'S SENTENCING MEMORANDUM<br><br>Date: May 22, 2006<br>Time: 2:00 p.m.<br>Hon. Martin Jenkins |

Pursuant to Criminal Local Rule 32-5(b), the government respectfully submits its sentencing memorandum concerning defendant Mehdi M. Rashidi. The parties stipulated to the Sentencing Guidelines in the plea agreement, which have also been recommended by the probation officer. Under the Rule 11(c)(1)(C) plea agreement, the parties and probation agree that the following applies: Total Offense Level of 10 and Criminal History Category I, resulting in a sentencing range of 6 to 12 months, four years of supervised release, a $6,000 fine, and $100 special assessment. The central sentencing issue is the appropriate sentence within the range and whether some imprisonment should be imposed. For the reasons noted below, the government requests that the sentence include at least ten months home confinement and some imprisonment

may be warranted given the seriousness of defendant's conduct.

## I. THE COURT SHOULD ADOPT THE GUIDELINES CALCULATIONS IN THE PLEA AGREEMENT AND PRESENTENCE REPORT

The maximum penalties for the Theft of Trade Secrets, in violation of 18 U.S.C. § 1832(a)(1), conviction are as follows:

| | | |
|---|---|---|
| a. | Maximum prison sentence | 10 years |
| b. | Maximum fine | $250,000 |
| c. | Maximum supervised release term | 5 years |
| d. | Mandatory special assessment | $100 |

The parties in the plea agreement, and the probation officer in her report, have recommended the following Sentencing Guidelines calculations:

| | | |
|---|---|---|
| a. | Base Offense Level (U.S.S.G. § 2B1.1(a)): | 6 |
| b. | Amount of Loss (U.S.S.G. § 2B1.1(b)(D)) (more than $30,000 but less than $70,000) | +6 |
| c. | Acceptance of responsibility: (If the requirements of U.S.S.G. § 3E1.1 are met) | -2 |
| d. | Adjusted Offense Level | 10 |

Under Criminal History Category I, an applicable Sentencing Guideline range of 6 to 12 months results. Under U.S.S.G. § 5C1.1(c ), for a sentence in Zone B, the Court may impose:

(1) a sentence of imprisonment; or
(2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in subsection (e), provided that at least one month is satisfied by imprisonment; or
(3) a sentence of probation that includes a condition or combination of conditions that substitute intermittent confinement, community confinement, or home detention for imprisonment according to the schedule in subsection (e).

The government submits that a sentence of ten months, in conjunction with some imprisonment, is reasonable to comply with the statutory purposes of sentencing. See 18 U.S.C. § 3553(a) (setting forth relevant sentencing factors such as seriousness of offense, just punishment, adequate deterrence, and protection of public).

// // //

II. UNFOLDING SCHEME TO MISAPPROPRIATE TRADE SECRETS

The trade secret investigation in this case revealed that the misappropriation of the trade secret and theft of other materials belonging to the defendant's employer was the product of coordination and planning by the defendant after he had accepted employment with Lab Vision Corporation, competitor of BioGenex . With his new position as Vice President, New Technologies at a competing company a few weeks away, defendant Rashidi executed his scheme to steal materials and information related to the Nirvana I-4000, an automated Staining System, from his employer, BioGenex, where he had worked from approximately 1998 until he resigned on September 2, 2004. As noted below, defendant Rashidi announced his resignation after he had already misappropriated company materials, which were later found in his residence during the execution of a search warrant.

The following events, confirmed during the investigation, highlight the defendant's unfolding scheme to misappropriate the trade secret and other materials from his employer:

- On July 30, 2004, the defendant received a written offer of employment from Lab Vision Corporation for the position of Vice President, New Technologies, with a base salary of $175,000 and a bonus plan of $25,000, among other benefits. Shortly afterward, he accepted this position.

- On August 11, 2004, defendant Rashidi approached an engineer at BioGenex who was testing the I-4000 Heater-Top Module/Component and asked a number of questions on how to correctly install the Heater-Top components and how the I-4000 system was cooled. A few days later, Rashidi again asked the engineer about the Heater-Top components of the I-4000.

- On Wednesday, August 25, 2004, at approximately 4:30 pm, and just one day before he announced his unexpected resignation, defendant Rashidi met with the Director of Regulatory Affairs, BioGenex and curiously asked about BioGenex' response to an employee who had stolen technology. He wanted to know about the legal action taken by BioGenex against the employee for the particular (former) employee's wrongful conduct. Defendant Rashidi also asked for a copy of the patent disclosure on the I-4000. Defendant Rashidi was told that the patent disclosure was confidential as BioGenex had not yet filed a patent on it. Since Rashidi had no connection to the project, the director asked Rashidi who had given him the authority to view the material. Rashidi told the director a supervisor had given him permission to look at the material. Based on Rashidi's request, his position in the company and his apparent authority, the director provided a photocopy of the patent disclosure containing drawings and technical know-how on the proprietary device to Rashidi.

- On Wednesday, August 25, 2004, defendant Rashidi asked the Manager of Inside Sales at BioGenex for the customer sales list and a "sales history by customer" for the last three years. Based on his request, this information was sent via e-mail to Rashidi in an Excel

format. Rashidi's area of responsibility did not include having this sale's list since it was outside the scope of his job responsibilities as an engineer.

- On Wednesday, August 25, 2004, at approximately 5:40 p.m., Rashidi spoke with a senior scientist and asked about the heating system and the control technology of the I-4000. Rashidi was given a copy of the operations manual. During the execution of the state search warrant at Rashidi's residence on September 1, 2004, the operations manual was located in Rashidi's residence. When later shown this item, the senior scientist recognized it as the operations manual which he had previously given to Rashidi.

- On Thursday, August 26, 2004, defendant Rashidi stole the original engineering notes of BioGenex engineer WC from his office, which was located in a building in which he did not work. [These engineering notes are the subject of the trade secret misappropriation count charged in the Information and referred to in the factual basis of the Plea Agreement.] The engineering notes, a company trade secret, contained confidential information concerning the design and specifications of the Nirvana I-4000, an automated Staining System product that BioGenex intended to produce and place in interstate commerce.

- On Thursday, August 26, 2004, at approximately 5:00 p.m., Rashidi called a supervising engineer for the I-4000, and indicated he needed to look at the Heater Top component/module. The supervising engineer responded that he had a Heater-Top component on his desk, and Rashidi could look at the module but could not dismantle it or take it out of the supervising engineer's office. When the supervising engineer left for the day, the Heater-Top component was on his desk. On the following day, Friday, August 27, 2004, the supervising engineer discovered that the Heater-Top component had been taken. On Wednesday, September 1, 2004, during a search incident to arrest, local officials found the Heater-Top component in side Rashidi's duffel bag. The supervising engineer later identified this Heater-Top component as the one which had been stolen from his office.

- On Thursday, August 26, 2004, at 5:04 p.m. and less that two hours before Rashidi was to e-mail his resignation, Rashidi asked the supervising engineer for a copy of the theoretical diagram (a.k.a. schematic) of the Heater-Top component for the I-4000. The supervising engineer sent an e-mail attachment labeled "tec" to Rashidi. Company officials later confirmed that Rashidi had no legitimate reason for viewing or receiving the schematic.

- On Thursday, August 26, 2004, just 2 minutes later, at 5:06 p.m., Rashidi forwarded the "tec" e-mail to himself, using as addressee the same address from which he was sending the e-mail, and including a "Bcc," a blind copy, in which Rashidi also sent the "tec" to himself at one of his personal e-mails (rashidi111@yahoo.com).

- On Thursday, August 26, 2004 at 5:40 p.m., security monitor video tapes show that approximately one hour prior to his resignation, Rashidi walked from the 4550 building carrying unobservable items. (Rashidi had no work-related reason to be removing items from the building.) The video is consistent with Rashidi's act of removing the engineer notes, the Heater-Top module, and other materials from the 4550 building, and which were subsequently found in his residence during the execution of the state search warrant.

- On Thursday, August 26, 2004, at 6:40 p.m., Rashidi entered the 4600 building, according to building security access records. At 6:46 p.m., and after misappropriating company materials and information, Rashidi unexpectedly resigned from BioGenex by sending an e-mail citing his resignation to the Human Resources Manager. The resignation e-mails stated in part: "Thank you very much for the opportunity to work

with you...at BioGenex. As discussed, I would like to give you my resignation from my post at BioGenex. My last day will be Thursday, September 2, 2004..."

- On Thursday, August 26, 2004, at approximately, 7:00 p.m., the cleaning staff observed Rashidi departing BioGenex. Rashidi was carrying a box containing unknown items.

- On Friday, August 27, 2004, at approximately 4:45 p.m., and the day after Rashidi's unexpected resignation, the Director of Regulatory Affairs contacted another supervisor to verify that the supervisor had given Rashidi permission to review the Nirvana I-4000 project. The supervisor stated that he had not given Rashidi permission to examine the invention and that Rashidi had no business viewing the invention since he had never been a part of the I-4000 project. During the execution of the state search warrant on September 1, 2004, a copy of the patent disclosure from Rashidi's home.

- On Wednesday, September 1, 2004, at 8:00 am, Rashidi was seen driving to the LabVision Corporation in Fremont, California. Rashidi remained inside of LabVision for most of the morning. While on a work break, Rashidi telephoned BioGenex officials and falsely stated that he was in the hospital with his father and thus unable to meet until later in the day.

- On September 1, 2004, just before 3:00 p.m., the BioGenex Human Resource Manager conducted Rashidi's exit interview at BioGenex. Rashidi twice confirmed stated that the only item in his possession belonging BioGenex was a single laptop computer. Rashidi also wrote on a certification: "1 laptop is being brought back by tomorrow."

- On September 1, 2004, a state search warrant was executed at Rashidi's residence. Some of the misappropriated items belonging to Biogenix included:

  - The set of engineer notes on the I-4000 (referred to in the factual basis for the plea agreement)
  - Another sets of engineer notes on the I-4000
  - Drawings of the I-4000
  - Patent disclosure of the I-4000
  - Confidential documents, correspondence, drawings, sketches, notes, schematics, components, and manuals concerning the I-4000
  - Other documentation from the I-4000
  - An iVision machine, unrelated to the I-4000, worth $150,000.
  - A video cassette containing a label referring to "I-4000" (including about ten minutes of the I-4000 while it was in motion and close-ups of the I-4000, showing how it functions)

In considering the relevant sentencing factors under section 3553, the nature and circumstances of the offense and the history and characteristics of the defendant, confirm that he accepted a new vice president position with a competitor company and executed a scheme to steal and misappropriate a trade secret and other materials belonging to his employer. Once defendant Rashidi had the materials and information belonging to Biogenix in hand, he unexpectedly announced his resignation. The recommended sentence reflects the seriousness of the offense, and will promote respect for the law, and provide just punishment for the offense, promote

deterrence.

III CONCLUSION

Based on the foregoing, the government respectfully requests that the Court sentence defendant to a term of ten months home confinement, including some possible imprisonment, four years of supervised release, a $6,000 fine, and $100 special assessment. More may be revealed on the imprisonment issue at the sentencing hearing. Finally, the plea agreement contains a waiver of appeal and collateral attack.

DATED: May 18, 2006

Respectfully submitted,

KEVIN V. RYAN
United States Attorney

/S/

MARK L. KROTOSKI
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

UNITED STATES v. MEHDI MATT RASHIDI

NO. CR 05-00744 MJJ

I, Karen Bishop, declare that I am a citizen of the United States, over the age of 18 years and not a party to the within action.

I hereby certify that a copy of the foregoing:

- **GOVERNMENT'S SENTENCING MEMORANDUM**

was served today ___by hand; ___by facsimile; ___by Federal Express; __**X**_by first class mailby placing a true copy of each such document(s) in a sealed envelope with postage thereon fully paid, either in a U.S. Mail mailbox or in the designated area for outgoing U.S. Mail in accordance with the normal practice of the United States Attorney's Office; ___by placing in the Public Defender's pickup box located in the Court Clerk's Office.

Ted W. Cassman
Arguedas, Cassman & Headley, LLP
803 Hearst Avenue
Berkeley, CA 94710

Karen Mar
U.S. Probation Officer
United States Probation Office
Northern District of California
1301 Clay Street, Suite 220S
Oakland, CA 94612-5206
FAX (510) 637-3625

I declare under penalty of perjury that the foregoing is true and correct, and that this certificate was executed at San Jose, California

DATED: May 19, 2006

/s/
___________________________
LAURI GOMEZ
Paralegal
United States Attorney's Office